MICHAEL J. HEYMAN
United States Attorney

MAC CAILLE PETURSSON
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, AK 99513-7567
Phone: (907) 271-5071
Email: mac.caille.petursson@usdoj.gov

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>KENDON LEE ROWCROFT-IVY,<br><br>Defendant. | No. 3:25-cr-00023-ACP-MMS |

**SENTENCING MEMORANDUM**

The United States recommends imposition of the following sentence:

**INCARCERATION**..............................................................**57 MONTHS**
**SUPERVISED RELEASE**........................................................**3 YEARS**
**SPECIAL ASSESSMENT**............................................................**$400**
**RESTITUTION** ........................................................................**N/A**
**FINE**......................................................................................**N/A**

//

//

//

The United States recommends imposition of a sentence at the low end of the United States Sentencing Guidelines (U.S.S.G.) as calculated by United States Probation (USPO), to be served concurrently as to each count of the Felony Indictment, followed by the maximum term of supervised release attached to each count, to be served concurrently. The defendant must pay the mandatory special assessment of $100 per count, totaling $400. The government is not seeking imposition of a fine, and there is no identifiable restitution in this case.

**FACTS**

Beginning on or about January 27, 2025, the defendant, Kendon Lee Rowcroft-Ivy, exchanged text messages with an undercover Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) agent on multiple occasions to arrange selling the agent firearms, including 3D printed firearms, machineguns, machinegun conversion devices, also known as "switches", and a silencer.

After agreeing with the undercover agent on the terms of the sales, the defendant knowingly possessed, transported, and transferred the following firearms:

On January 31, 2025, the defendant met with the undercover agent in Anchorage, Alaska and sold them two machinegun conversion devices for $1,000.

On February 4, 2025, the defendant sold the agent 10 conversion devices and a Palmetto State Armory Pistol with a silencer in Anchorage.

On February 6, 2025, the defendant sold the agent a 3D printed, 9 caliber machinegun with a conversion device and ammunition for $700 in Anchorage. The machinegun was designed to shoot, or could be readily restored to shoot, automatically

*U.S. v. Rowcroft-Ivy*
3:25-cr-00023-ACP-MMS                     Page 2 of 15
Case 3:25-cr-00023-ACP-MMS     Document 55     Filed 06/18/26     Page 2 of 15

more than one shot, without manual reloading, by a single function of the trigger. All the firearms the defendant sold traveled in and affecting interstate and foreign commerce. None of the firearms the defendant sold to the undercover agent were registered to him in the National Firearms Registration and Transfer Record and defendant has never possessed a federal firearms license. The defendant knew and had reasonable cause to believe that the use, carrying, or possession of such firearms by the recipient would constitute a felony.

A Grandy Jury indicted the Defendant in March 2025 with three counts of trafficking in firearms, in violation of 18 U.S.C. § 933(a)(1) and (3), one count of unlicensed dealing in firearms, in violation of 18 U.S.C. §§§ 922(a)(1)(A), 923(a), 924(a)(1)(D), three counts of illegal possession of machineguns, in violation of 18 U.S.C. §§ 922(o) and 924(a)(2), and one count of possession of a firearm with obliterated serial number, in violation of 18 U.S.C. §§ 922(k), 924(a)(1)(B). Defendant plead guilty in March 2026 to three counts of trafficking in firearms and one count of illegal possession of a machinegun.

Defendant was released to pretrial supervision in April 2025. Within months, he continued some of the same illegal conduct that led to his arrest, resulting in his detainment.

**STATUTORY CRITERIA AND RECOMMENDED SENTENCE**

**1. Nature and circumstances of the offense**

The defendant sold two firearms, 13 machinegun conversions devices (MCDs), and a silencer to undercover officers over the course of 10 days for a total of $12,500. One of those firearms was 3D printed. As discussed in greater detail below, 3D printed firearms are extremely dangerous, increasingly abundant, and difficult for law enforcement to track.

*U.S. v. Rowcroft-Ivy*
3:25-cr-00023-ACP-MMS          Page 3 of 15
Case 3:25-cr-00023-ACP-MMS     Document 55     Filed 06/18/26     Page 3 of 15

The defendant also possessed an unregistered firearm. Images of those firearms and MCDs are depicted below:

 

MCD's

//

//

//

//

//

//

//

//

//

Case 3:25-cr-00023-ACP-MMS    Document 55    Filed 06/18/26    Page 4 of 15



 

Palmetto State Armory Pistol, Model PA-15 with a silencer

//

*U.S. v. Rowcroft-Ivy*
3:25-cr-00023-ACP-MMS          Page 5 of 15

 

1 3D-printed, 9 Caliber Machinegun with a Machinegun Conversion Device



Obliterated Glock 21 .45 ACP semiautomatic pistol

*U.S. v. Rowcroft-Ivy*
3:25-cr-00023-ACP-MMS          Page 6 of 15
Case 3:25-cr-00023-ACP-MMS          Document 55          Filed 06/18/26          Page 6 of 15

A 57-month sentence is appropriate to address this factor, particularly the presence of the MCDs, which are not accounted for in the guideline calculations.

**2. History and characteristics of the defendant**

Defendant is before the Court at the young age of 20. He has limited criminal history, a substance abuse history that began at the age of 12 and has suffered a history of domestic abuse and has a history of suicidal ideation and attempts.

Defendant is responsible for trafficking in dangerous firearms and machinegun conversion devices without the authority to do so. Although Defendant is very young and hopefully capable of reform, he has already demonstrated that he does not do well on supervision.

The Court previously released Defendant on conditions after his initial appearance and arraignment in April 2025. He quickly continued the same conduct for which he was originally indicted. According to Defendant's own Instagram account, beginning by at least July 2025 and continuing up until his arrest in September, Defendant continuously violated his conditions of release by possessing firearms, ammunition, and controlled substances, trafficking in firearms and controlled substances, and not living at the residence he provided to his Probation officer.

On September 18, 2025, ATF executed federal search warrant on Rowcroft-Ivy's reported residence, in Anchorage, AK. He was not present and the sole occupant, T. Garica, reported that he had not been living there since approximately July 16, 2025. She reported the address where Rowcroft-Ivy was believed to be staying since moving out. Law enforcement conducted surveillance at that address and saw Rowcroft-Ivy present at

*U.S. v. Rowcroft-Ivy*
3:25-cr-00023-ACP-MMS                Page 7 of 15
Case 3:25-cr-00023-ACP-MMS    Document 55    Filed 06/18/26    Page 7 of 15

that address in Anchorage, along with a vehicle that Frank Rowcroft-Ivy, Rowcroft-Ivy's father, and T. Garcia reported him to be using. Subsequent warrants for his vehicle and that residence resulted in the discovery of multiple firearms, ammunition, and distribution level quantities of marijuana.

Specifically, three guns were found in a closet at the residence Rowcroft-Ivy was staying at. The picture below depicts the butt of two guns, as well as a third gun, magazine, ammunition, and a box of ammunition:



Though not visible in the above photo, one of the guns was missing a magazine. A search of Rowcroft-Ivy's vehicle revealed the missing magazine that fit that gun. A crown royal bag was also discovered in his vehicle containing ammunition that matched a box of ammunition inside the closet that only contained a few rounds in it. The 15 rounds of ammunition in the magazine in Rowcroft-Ivy's vehicle matched the 9mm box of

*U.S. v. Rowcroft-Ivy*
3:25-cr-00023-ACP-MMS          Page 8 of 15
Case 3:25-cr-00023-ACP-MMS    Document 55    Filed 06/18/26    Page 8 of 15

ammunition found in the closet as well. Rowcroft-Ivy's phone, which had a screensaver of his known Instagram account photo, from which he was publicly advertising his possession and sale of weapons and controlled substances, was located outside the closet that contained firearms and ammunition that appeared to be hidden in a bin under a bunch of items.

Rowcroft-Ivy's vehicle contained a copy of his conditions of release for the current federal case, a copy of the search warrant that was executed in February of his residence, ATF paperwork for asset forfeiture for items seized out of his house, as well as distribution quantities of marijuana. Ammunition and loaded magazine pictured below were found in the front seat floorboard and glove compartment of Rowcroft-Ivy's vehicle:



*U.S. v. Rowcroft-Ivy*
3:25-cr-00023-ACP-MMS                    Page 9 of 15
Case 3:25-cr-00023-ACP-MMS     Document 55     Filed 06/18/26     Page 9 of 15







//

//

*U.S. v. Rowcroft-Ivy*
3:25-cr-00023-ACP-MMS          Page 10 of 15
Case 3:25-cr-00023-ACP-MMS      Document 55      Filed 06/18/26      Page 10 of 15

## 3. The seriousness of the offense, just punishment, and protection of the public from further crimes

Defendant's conduct in trafficking in Personally Manufactured Firearms (PMFs) is very dangerous. PMFs, commonly referred to as "ghost guns" because of the difficulty law enforcement can face in tracking them, include 3D printed guns and MCDs. A firearm equipped with an MCD is extremely dangerous, even for experienced firearms users, because it is difficult to control and is capable of firing 50 rounds in four seconds with a single pull of the trigger.[1] Investigating crimes involving unserialized PMFs can create difficulty in tracing the origins of the firearm and linking them to related crimes. From 2016 through 2021, there were approximately 45,240 suspected privately made firearms reported to ATF as having been recovered by law enforcement from potential crime scenes, including 692 homicides or attempted homicides. These issues have led to some states passing additional laws related to PMFs.

According to ATF data, between 2017 and 2023, 92,702 suspected PMFs were recovered by law enforcement and subsequently traced. During this time period, the number of suspected PMFs recovered in crimes and submitted for tracing has increased by 1,588%. The total number of PMF recovered between 2022 and 2023 was 44% (54,722) greater than the total number of PMFs recovered over the five prior years (37,980).[2]

---

[1] U.S. Attorney's Office And ATF Highlight Emerging Threat Posed by Machinegun Conversion Devices, December 2, 2024, https://www.justice.gov/usao-wdwi/pr/us-attorneys-office-and-atf-highlight-emerging-threat-posed-machinegun-conversion.
[2] Part V: Privately Made Firearms Updates and New Analysis, ATF, https://www.atf.gov/sites/default/files2/nfcta_volume_iv_-_part_v_0.pdf; https://www.datawrapper.de/_/eUBbF/.

*U.S. v. Rowcroft-Ivy*
3:25-cr-00023-ACP-MMS          Page 11 of 15
Case 3:25-cr-00023-ACP-MMS     Document 55     Filed 06/18/26     Page 11 of 15



**Privately made firearms recovered from crime scenes and traced by the ATF, 2017-2023**

The number of privately made firearms, or "ghost guns," recovered in 2022 and 2023 was 44% higher than the total recovered during the previous five years combined. The federal Bureau of Alcohol, Tobacco, Firearms and Explosives noted that the increase likely reflects both growing production of these types of weapons and improved efforts to identify and trace them.

The number of suspected MCDs recovered in crimes by law enforcement and subsequently traced by ATF has increased rapidly with more than a 784% increase in recoveries and traces between 2019 (658) and 2023 (5,816).[3] This exponential rise is likely attributable to both an increase in the number of MCDs being made and subsequently recovered by law enforcement as well as developing law enforcement awareness for identifying and tracing recovered MCDs. MCDs account for nearly 13% (11,088) of all PMFs (88,425) recovered and traced between 2019 and 2023.[4]

//

//

//

//

//

---

[3] *Id.*
[4] *Id.*

*U.S. v. Rowcroft-Ivy*
3:25-cr-00023-ACP-MMS          Page 12 of 15



**Total MCDs Recovered in Crimes and Traced**



ATF data indicates that there were 316 (3.3% of 9,708) ATF trafficking investigations involving PMFs between 2017-2021 and subsequently closed by March 10, 2023.[5] Of these investigations, nearly 33% (104 of 316) only involved PMFs. Nearly 95% (299 of 316) of PMF trafficking investigations identified known firearm trafficking channels. The most frequent types of trafficking channels were unlicensed firearm dealing by private persons (63.9%) and trafficking through unlicensed making (62.5%). Nearly 71% (117 of 165) of investigations involving more than one trafficking channel involved both unlicensed dealing and unlicensed making. Defendant's conduct mirrors those statistics.

//

---

[5] *Id.*

*U.S. v. Rowcroft-Ivy*
3:25-cr-00023-ACP-MMS                     Page 13 of 15

The proliferation of PMFs has corresponded to an increase in their use in crimes. From January 1, 2017, through December 31, 2023, U.S. law enforcement agencies recovered and submitted for tracing 92,702 suspected PMFs. The number of suspected PMFs recovered in crimes has increased rapidly with an almost 1,600% increase in recoveries and traces between 2017 (1,629) and 2023 (27,490). PMFs recovered and submitted for tracing were associated with 1,692 homicide-related offenses and 4,106 other violent crime offenses.[6]

These statistics highlight the danger that Defendant's conduct poses to the community.

### 4. Adequate deterrence

Deterrence, both specific and general, is an important factor in this case, especially given Defendant's age, his continued conduct, and the involvement of 3D printed firearms. He has not spent any previous time incarcerated prior to the current offenses. A 57-month sentence is intended to help deter the defendant from continuing this conduct, as well as the public as PMFs grow in popularity.

### 5. Avoidance of unwarranted disparities

During the last five fiscal years (FY2021-2025), there were 200 defendants whose primary guideline was §2K2.1, with a Final Offense Level of 25 and a Criminal History Category of I, after excluding defendants who received a §5K1.1 substantial assistance departure. For the 188 defendants (94%) who received a sentence of imprisonment in

---

[6] *Id.*

*U.S. v. Rowcroft-Ivy*
3:25-cr-00023-ACP-MMS          Page 14 of 15

whole or in part, the average length of imprisonment imposed was 48 month(s) and the median length of imprisonment imposed was 50 month(s). As the USPO pointed out, the guidelines do not properly account for the sale of the MCDs, for which Defendant sold over a dozen. When factoring that in, as well as the short duration of time that Defendant sold multiple firearms and MCDs, as well as his conduct while on pretrial release in this case, a sentence of 57-months is appropriate.

## CONCLUSION

For the reasons stated above, the government recommends a sentence of 57-months, followed by three years of supervised release. Such a sentence sufficient but not greater than necessary considering the 3553(a) factors.

RESPECTFULLY SUBMITTED June 18, 2026 at Anchorage, Alaska.

MICHAEL J. HEYMAN
United States Attorney

s/ *Mac Caille Petursson*
MAC CAILLE PETURSSON
Assistant United States Attorney
United States of America

**CERTIFICATE OF SERVICE**

I hereby certify that on June 18, 2026 a true and correct copy of the foregoing was served electronically on all counsel of record.

s/ *Mac Caille Petursson*

*U.S. v. Rowcroft-Ivy*
3:25-cr-00023-ACP-MMS          Page 15 of 15
Case 3:25-cr-00023-ACP-MMS     Document 55     Filed 06/18/26     Page 15 of 15