Steven M. Wells
Steven M. Wells, P.C.
431 W. 7th Ave.
Ste. 107
Anchorage, AK 99501
(907)279-3557
(907)279-3558 fax
steve@alaskalegaldefense.com

CJA Attorney for Defendant

UNITED STATES DISTRICT COURT
DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>KENYON LEE ROWCROFT-IVY,<br><br>Defendant. | Case No. 3:25-cr-23-SLG<br><br><br>SENTENCING MEMORANDUM |

Mr. Rowcroft-Ivy, accused, hereby files the following memorandum in anticipation of imposition of sentence set for June 25, 2026. Mr. Rowcroft-Ivy recommends a sentence of fifty months in custody followed by three years of supervised release.

1. GUIDELINE ANALYSIS

*United States v. Rowcroft-Ivy*
Case No. 3:25-cr-023-SLG
Sentencing Memoranda
Page 1 of 8

Mr. Rowcroft-Ivy has no opposition to the guideline analysis in the pre-sentence report. That guideline calculation puts his final guideline level at a level twenty-five (25) with a criminal history category of I. This results in a final guideline range of 57 to 71 months in custody.

Mr. Rowcroft-Ivy would note paragraph 26 of the pre-sentence report discusses Mr. Rowcroft-Ivy engaging in criminal conduct as a livelihood. This note did not affect Mr. Rowcroft-Ivy's final guideline level so he did not object but this calculation is incorrect.

To qualify for this enhancement under U.S.S.B. §4B1.2, Application Note 2 requires that the income exceeded the federal minimum wage by 2,000 times within the preceding twelve months. The federal minimum wage was $7.25 an hour. Multiplied by 2,000 would equal $14,500, which is greater than the $12,500 claimed by the pre-sentence report. Further, not all of the money went to Mr. Rowcroft-Ivy. Irrespective of that analysis, it ultimately does not impact his Guideline calculation so this is more of an observation than an objection.

2. OBJECTIONS TO PRE-SENTENCE REPORT

Mr. Rowcroft-Ivy had no unresolved objections to the pre-sentence report.

3. 3553(a) Factors

*United States v. Rowcroft-Ivy*
Case No. 3:25-cr-023-SLG
Sentencing Memoranda
Page 2 of 8

Finally, 18 U.S.C. §3553(a) requires this court to consider a variety of factors before imposing a sentence that is sufficient but not greater than necessary. Mr. Rowcroft-Ivy recommends a sentence of fifty-seven months, the low end of the guideline range.

Mr. Rowcroft-Ivy is facing conviction for selling Glock switches, devices that could convert a Glock pistol from firing one round per squeeze of the trigger to firing multiple rounds per squeeze of the trigger. Cases involve machine guns have a greater possibility of creating an emotional reaction than a typical gun or fraud case because they can create the impression that innocent civilians will be randomly gunned down in a hail of bullets.

The reality, though, is that Glock switches have not proven to be as deadly as feared. Recent research from the Crime Prevention Research Center has shown that since 2021, lightning has killed more people that firearms equipped with Glock switches.[1]

This is not to diminish that Mr. Rowcroft-Ivy's conduct was illegal. But as this court imposes sentence, it should separate the hysteria from the reality about Glock switches.

And the reality is that Mr. Rowcroft-Ivy is just a young man with no criminal history who, like many Alaskans, likes guns and shooting. And like many young Alaskan men who like guns and shooting, Mr. Rowcroft-Ivy thinks that machine guns are cool.

The pre-sentence report notes that this case started when Mr. Rowcroft-Ivy sold a confidential human source (CHS) two legal pistols, an AR-15 pistol and a Glock.[2] In

---

[1] Crime Prevention Research Center, UPDATED: How many people have been murdered with Glock-style guns using Glock switches? About 43 total over the five plus years from 2021 to now?, May 27, 2027, available at: https://tinyurl.com/494ja53n

[2] Pre-sentence Report, Docket 54, at ¶ 6.

*United States v. Rowcroft-Ivy*
Case No. 3:25-cr-023-SLG
Sentencing Memoranda
Page 3 of 8

Alaska, such sales are perfectly legal. There is no indication that the CHS was an otherwise prohibited person or that Mr. Rowcroft-Ivy would have any reason to suspect he was a prohibited person. Put another way, these sales are completely in line with sales that occur every day via Alaskaslist.com. Mr. Rowcroft-Ivy did admit he had switches but only after he was asked by the CHS.

Mr. Rowcroft-Ivy later sold other firearms, Glock switches, and suppressors[3] to the CHS and an undercover (UC) agent. He did so out of his enthusiasm for firearms, not to because Mr. Rowcroft-Ivy sought to provide machine guns to gangsters protecting their turf or to drug-dealers wanting to muscle out competition but from Mr. Rowcroft-Ivy's own naivete.

As one example, consider that Mr. Rowcroft-Ivy has no criminal history points. The only criminal interaction noted in the pre-sentence report is for having a joint at the airport when he was seventeen years old. Numerous courts have recognized that being a first offender, especially a first offender with zero history points, is a legitimate reason to impose a lower than guideline sentence.[4] One reason courts routinely grant lower than

---

[3] Suppressors are covered by the National Firearms Act. Suppressors, though, generally make a firearm substantially safer to shoot. Unlike movies displaying assassins shooting at each other with suppressed weapons amidst a crowd of people, suppressors generally lower the sound of a firearm by about 30-35dB. For more firearms, this puts suppressor sounds below 140dB, but above 130dB. 140dB is the threshold for permanent hearing damage but 130dB is roughly as loud as a chainsaw. Suppressors ultimately make shooting safer for the shooter and those nearby. For more information about how suppressors work, see https://tinyurl.com/bdfy7b2b.

[4] *U.S. v. Paul,* 561 F.3d 970 (9th Cir. 2009)(where defendant convicted of embezzlement and guidelines 10-16 months, court's within guideline sentence of 15 months unreasonably high in part because Paul was a first-time offender with no criminal record whatsoever); *U.S. v. Autery*, 555 F.3d 864 (9th Cir. 2009) (where defendant convicted of possession of child porn and where guidelines 41-51 months, court's *sua sponte* variance to probation not unreasonable in part because defendant's first conviction and Crim. History

*United States v. Rowcroft-Ivy*
Case No. 3:25-cr-023-SLG
Sentencing Memoranda
Page 4 of 8

guideline sentences for first time offenders is because prison has a much greater impact

upon someone experiencing it for the first time rather than it being a routine occurrence.[5]

---

Level I "did not fully account or his complete lack of criminal history" because defendant with minor criminal history still falls in cat. I); *U.S. v. Huckins* (10th Cir. 2008) 529 F.3d 1312(10th Cir. 2008)(defendant convicted of possession of child porn and guidelines 78-97 months, court's variance to 24 months proper in part because this was defendant's first conviction --rejecting government's argument that guidelines already considered this by placing defendant in Crim. Cat. I. "Although the Guidelines discourage granting a downward departure based upon criminal history when the defendant has been placed in a criminal history category of I...this is a not a departure case, it is a variance case....and, after *Gall* and *Kimbrough*, a factor's disfavor by the Guidelines no longer excludes it from consideration under § 3553(a).... Therefore, a district court may weigh a defendant's lack of a criminal record, even when the defendant has been placed into a criminal history category of I, in its § 3553(a) analysis."); ."); *US v. Duane*, 533 F.3d 441 (6th Cir. 2008) ([T]he district court did not respond to Duane's first argument — that he deserved a more lenient sentence because he had zero criminal history points. This was not a particularly strong argument given that Duane's criminal history category was taken into account in determining his Guidelines range. But the argument was not completely frivolous. Because Duane had zero points at age 57, he might plausibly argue that even category I — which applies when a defendant has zero or one criminal history point(s) — overstated his criminal history to some degree."); See also Report of USSC (May 2004) "Recidivism and the 'First Offender',", ("The analysis [of empirical data on re-offending] delineates recidivism risk for offenders with minimal prior criminal history and shows that the risk is lowest for offenders with the least experience in the criminal justice system. Offenders with zero criminal history points have lower recidivism rates than offenders with one or more criminal history points. Even among offenders with zero criminal history points, offenders who have never been arrested have the lowest recidivism risk of available at https://tinyurl.com/bdf7hdj6.

[5] *U.S. v. Paul, supra* note 4, (9th Cir. Aug. 17, 2007) (unpub.) (within guideline sentence of 16 months (high end) for taking government money unreasonably high in part because Paul was "a first-time offender with absolutely no criminal record whatsoever"); *U.S. v. Baker.* 445 F.3d 987 (7th Cir. 2006) (in distribution of child porn case court affirms below guideline sentence of 78 months (guidelines called for 108) noting that "significant is the district court's finding that a prison term would mean more to Mr. Baker than to a defendant who previously had been imprisoned. Consideration of this factor is consistent with§ 3553's directive that the sentence reflect the need for "just punishment," *id.* § 3553(a)(2)(A), and "adequate deterrence," *id.* § 3553(a)(2)(B)"); *U.S. v. Santoya*, 493 F.Supp.2d 1075 (E.D. Wisc. 2007) (in distribution of cocaine case where client career offender, below guideline sentence appropriate because a lesser period of imprisonment necessary to deter a defendant who has not previously been subject to lengthy incarceration and where "the sentencing commission has acknowledged that when career offender status is based on relatively minor drug offenses, the guidelines may create a sentence greater than necessary"); *U.S. v. Willis,* 479 F.Supp.2d 927 (E.D.Wis. 2007) (in drug case where guideline range was 120 months but statutory max. was 60 months, sentence of one year and one day sufficient in part because sentence "sentence provided a substantial punishment for someone like defendant, who had never before been to jail and who engaged in no violence or dealing herself"); *U.S. v. McGee,* 479 F.Supp.2d 910 (E.D. Wisc. 2007) (in heroin distribution case where guideline range was 21-27 because defender got mitigating role reduction and safety valve, sentence of one year and one day imposed because guideline range in part because defendant "had never before been to prison and 'generally a lesser period of imprisonment is required to deter a defendant not previously subject to lengthy incarceration than is necessary to deter a defendant who has already served some serious time yet continues to reoffend."); *U.S. v. Cull*, 446 F.Supp.2d 961 (E.D. Wisc. 2006) (in

*United States v. Rowcroft-Ivy*
Case No. 3:25-cr-023-SLG
Sentencing Memoranda
Page 5 of 8

Furthermore, courts have recognized that there are real risks to a sentence that is too long. For example, a sentence that is too long can impede rehabilitation.[6] Too long of a

marijuana case where guidelines 10 to 14 months, though defendant "not entitled to departure under pre-Booker standards" and where "nothing extraordinary about the case or the defendant," court imposes 2 months jail with 4 months home confinement as a condition of supervised release imposed because "Defendant had never been confined before, so [2 months jail time] was sufficient to impress upon him the seriousness of the offense and to deter others under similar circumstances."); *U.S. v. Qualls*, 373 F. Supp. 2d 873, 877 (E.D. Wis. 2005) ("Generally, a lesser period of imprisonment is required to deter a defendant not previously subject to lengthy incarceration than is necessary to deter a defendant who has already served serious time yet continues to re-offend.").

[6] *U.S. v. Stall,* 581 F.3d 276 (6th Cir. 2009) (in child porn. case where guidelines 57-65 months, court's sentence of 1 day in jail, 10 years supervised release, and one year house arrest, not unreasonable in part because of strong testimony by expert as to defendant's mental state, ongoing therapy, and unlikely chance of recidivism, and that imprisonment would interrupt course of treatment); *U.S. v. Olhovsky,* 562 F.3d 530 (3d Cir. 2009)(where defendant convicted of possession of porn., district court's below-guideline sentence of 72 months unreasonably high in part because the record did not reflect the reasons for the court's " believing that treatment in prison would "provide . . .correctional treatment in the most effective manner" [as required by 18 U.S.C. § 3553(a)(2)(D)] despite [treating psychologist's] opinion to the contrary" and that in prison defendant "would just regress terribly."); *U.S. v. Autery,*555 F.3d 864 (9th Cir. 2009) (where defendant convicted of poss. of porn. and where guidelines 41-51 months, court's sua sponte variance to probation not unreasonable in part because of district court's determination that incarceration "would undermine" defendant's rehabilitation and that "probation with psychiatric treatment was a more appropriate sentence" than incarceration); *U.S. v. Duhon*, 541 F.3d 391 (5th Cir. 2008) (where defendant convicted of possession of child porn and guidelines 33-40 months, district court's sentence to probation reasonable in part "Because of the district court's strong emphasis on [Duhon's] general need for treatment"); *U.S. v. Cherry*, 487 F.3d 366 (6th Cir. 2007) (where defendant convicted of possessing child pornography and guideline range was 210-262 months, sentence of 120 months (43% variance from guidelines) was proper in part because defendant wanted to continue counseling and treatment but nothing available in prison); *U.S. v Polito*, (5th Cir. Jan. 31, 2007) 2007 WL 313463 (unpub.) (where defendant convicted of possession of child pornography and guidelines 27-33 months, district court's sentence of probation with one year house arrest reasonable in part because "a term of imprisonment would interrupt Polito's mental health treatment"); *U.S. v. Collington*, 461 F.3d 805 (6th Cir. 2006) (in drugs and gun case where guidelines 188 -235, sentence of 120 months affirmed in part because "a 120 month sentence is sufficient enough to reflect the crimes committed while allowing for the possibility that Collington may reform and after his release from prison, when he is in his mid-thirties, may go on to a productive life in society."); *U.S. v. Halsema,* 2006 WL 1229005, 2 (11th Cir. 2006) (unpub.) (in child porn case where guidelines 57-71 months, district court's sentence of 24 months proper where "district court relied on expert testimony that a longer sentence would negatively affect Halsema's rehabilitation."); See *U.S. v. Pallowick,* 364 F.Supp.2d 923 (E.D. Wisc. 2005) (where Defendant convicted of six armed bank robberies and advisory guidelines were 70-87 months, court imposes sentence of 46 months because no one was hurt and defendant made no direct threats of harm, defendant's only prior offense was burglary committed shortly before robberies, his severe mental illness of major depressive disorder and anxiety disorder played major role in offenses, after arrest he completed in-patient treatment, enrolled in counseling, and took medication, he was not dangerous and unlikely to re-offend. "I further conclude[] that sending defendant to prison for a lengthy period of time would not aid in his rehabilitation and might actually hinder the progress he made in counseling. See 18 U.S.C. § 3553(a)(2)(D)"); *U.S. v.*

sentence can also promote recidivism.[7] These are all reasons why a below guideline

sentence of fifty months satisfies 18 U.S.C. §3553(a).

### 4. Conclusion

---

*Thompson*, 315 F.3d 1071 (9th Cir.  2002) (Berzon, J. concurring) (although district court erred in departing downward on ground that D's conduct outside heartland of possession of child porn guideline, district court should consider departure to allow defendant to enter sex treatment in prison immediately, instead of waiting years in prison); *U.S.  v. Jones*, 158 F.3d 492 (10th Cir. 1998) (where defendant pled guilty to possession of a firearm by a prohibited person, the district court did not abuse its discretion in departing downward by three levels when, as one of eleven factors, it considered that imprisonment would sever the defendant's access to rehabilitative counseling – one of the purposes of sentencing is "to provide the defendant with needed education or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. §3553(a)(2)(D)); *U.S.  v. Martin*, 827 F.Supp. 232 (S.D.N.Y. 1993) (district court departed downward from 48 to 30 months to enable defendant to be eligible for boot camp. Court found that boot camp might help the defendant make a clean break with former lifestyle and departure proper if boot camp provided the best hope of protecting the public, deterring misconduct and providing rehabilitation); *U.S.  v. Duran*, 37 F.3d 557, 560-61 & n. 3 (9th Cir. 1994) ("once imprisonment is selected as the means of punishment," the court may consider "correctional treatment" and "rehabilitation" to determine the length of sentence.  In this case, these considerations justified a longer sentence. Court notes that "a sentence of not less than 12 nor more than 30 months permits the court to commit a defendant to an Intensive Confinement Center."  In addition, a sentence of 18 to 24 months allowed inmate to enter, complete, and receive "fullest possible benefit under prison drug abuse program.").

[7] *U.S.  v. Olhovsky* 562 F.3d 530 (3d Cir. 2009)(District court failed to give adequate consideration to all statutory sentencing factors in sentencing defendant to six years' imprisonment for possession of child pornography, where it was not apparent that court considered lengthy, specific, and positive reports of three defense experts, court focused on incapacitation, deterrence, and punishment to exclusion of other factors, court never explained why it rejected treating psychologist's assessment of likelihood of recidivism or his opinion that defendant would regress if incarcerated, and it appeared that court was so appalled by offense that it lost sight of offender.); See also JFA Associates, Unlocking America, Why and How to Reduce America's Prison Population (JFA Institute, November 2007) at page 10 (found at http://jfa-associates.com/__static/fb37390f75aa6368c2dea452cd05d648/unlockingamerica.pdf ( "Enduring years of separation from family and community—deprived of material possessions, subjected to high levels of noise and artificial light, crowded conditions and/or solitary confinement, devoid of privacy, with reduced options, arbitrary control, disrespect, and economic exploitation—is maddening and profoundly deleterious.  Anger, frustration, and a burning sense of injustice, coupled with the crippling processes inherent in imprisonment significantly reduce, the likelihood that prisoners are able to pursue a viable relatively conventional life after release."); See Haney and Zimbardo, *The Past and Future of U.S. Prison Policy: Twenty-five Years After the Stanford Prison Experiment,"* American Psychologist*, Vol. 53, No. 7 (July 1998), p. 721* ("Department of corrections data show that about a fourth of those initially imprisoned for nonviolent crimes are sentenced for a second time for committing a violent offense. Whatever else it reflects, this pattern highlights the possibility that prison serves to transmit violent habits and values rather than to reduce them.") available at: https://tinyurl.com/45ukrsht

*United States v. Rowcroft-Ivy*
Case No. 3:25-cr-023-SLG
Sentencing Memoranda
Page 7 of 8

Mr. Rowcroft-Ivy sold machine guns when he should not have. This court should see his actions, though, as coming from a young man with an interest in firearms rather than a nefarious intent. In that way, Mr. Rowcroft-Ivy is similar to millions of young and not-so-young men and women across this country.

While that does not legally excuse his conduct, it does put his conduct in perspective. This court should sentence him to fifty months in custody followed by three years of supervised release.

DATED this 21st day of June, 2026, at Anchorage, Alaska.

Steven M. Wells, PC
Attorneys for Defendant

By:    _/s/ Steven M. Wells_____
Steven M. Wells
ABA #0010066

CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was served **via CM/ECF** this 21st day of June, 2026, on:

All Parties of Record

_/s/ Steven M. Wells_____.
Steven M. Wells, PC

*United States v. Rowcroft-Ivy*
Case No. 3:25-cr-023-SLG
Sentencing Memoranda
Page 8 of 8